UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THE BREAKWATER COMMONS
ASSOCIATION, INC.,

    Plaintiff,

v.                                   Case No. 2:20-cv-31-JLB-NPM

EMPIRE INDEMNITY INSURANCE
COMPANY

    Defendant.
_____

**ORDER**

Before the Court are Plaintiff's Motion to Compel Appraisal and Stay Proceedings (Doc. 22); Plaintiff's Request for Oral Argument (Doc. 23); and Defendant's Response (Doc. 26);[1] as well Plaintiff's Motion to Stay Deposition Discovery pending a ruling on the motion to compel appraisal (Doc. 52) and Defendant's response (Doc. 53). As discussed below, the Court grants in part the motion to compel appraisal and stay proceedings and denies the motion to stay deposition discovery.

**I.    Background**

On September 10, 2017, the eye of Hurricane Irma passed over Naples, Florida. This significant windstorm event gave rise to a substantial number of

---

[1] The parties also filed notices of supplemental authority. (Docs. 45, 47).

insurance claims and a wave of insurance-coverage suits before the Fort Myers division of this Court. This is one of them.

Plaintiff The Breakwater Commons Association, Inc. is one of many Naples-area condominium complexes struck by the storm. At the time of the event, its twenty-eight buildings were insured by Defendant Empire Indemnity Insurance Company. Under the policy, each of Breakwater's 27 residential buildings had $2,604,355 in property-damage coverage, and the clubhouse had $630,979 in property-damage coverage and $100,000 in personal-property coverage. (Doc. 3-1, pp. 11-13). This amounted to an initial coverage amount of $71,048,564. In addition, the policy provided for $5,000,000 in ordinance or law coverage combined for all structures (with a $25,000 limit per building), as well as coverage for other items like debris removal. (Doc. 3-1, pp. 59-62, 73). Losses may be determined by replacement cost value (RCV) or actual cost value (RCV-depreciation), but RCV benefits are limited to the lesser of RCV, policy limits, or the amount of money actually spent to make repairs. (Doc. 3-1, p. 42). Each building had a hurricane deductible equal to 3% of the coverage limit. (Doc. 3-1, pp. 14-15).

There is no dispute that Hurricane Irma was a covered peril and that Breakwater sustained significant windstorm damage as a result of the storm. Nor is there any dispute that Breakwater reasonably complied with what are commonly referred to as the post-loss conditions of the policy, such as making a timely claim,

submitting a sworn proof of loss, supplying information about the loss, and making the property available for inspection. But like so many other cases, the parties disagree about the scope and dollar value of the loss.

Pursuant to its assessment of the loss, Empire paid Breakwater a total of $1,792,548.00 by multiple instalments through October 2018. (Doc. 21, ¶ 14; Doc. 22-2; Doc. 22-3). Disagreeing with this assessment, Breakwater submitted sworn statements of loss for $21,290,736.10 (after deductibles) (Doc. 37-1) and for additional ordinance or law coverage (Doc. 32-3, p. 5) for subsequent determination. By Breakwater's calculation, the RCV for the loss is $27,417,966 and the ACV is $23,419,193.02. (Doc. 37-1).

The policy contains a unilateral appraisal provision whereby either party may insist that the amount of loss be determined by an appraisal panel. (Doc. 3-1, p. 44). In relevant part, the Policy states:

> If we and you:
>
>> Disagree on the value of the property or the amount of loss, either may request an appraisal of the loss, in writing. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>>
>> 1.  Pay its chosen appraiser; and

> 2. Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

(*Id.*).

Amid receiving benefit payments from Empire, Breakwater invoked the appraisal provision in August 2018. (Doc. 22-4). And while supplying additional claim-related information to Empire, Breakwater invoked the appraisal provision again in March 2019. (Doc. 22-1). Empire did not agree to pay anything more, and it refused to submit the amount-of-loss question to an appraisal panel. Hence, Breakwater initiated this breach-of-contract suit and then moved to refer resolution of the amount-of-loss issue to an appraisal panel.

## II.   Discussion

When an insurance policy contains an appraisal provision, "the right to appraisal is not permissive but is instead mandatory, so once a demand for appraisal is made, 'neither party has the right to deny that demand.'" *McGowan v. First Acceptance Ins. Co., Inc.*, 411 F. Supp. 3d 1293, 1296 (M.D. Fla. 2019) (quoting *United Cmty. Ins. Co. v. Lewis*, 642 So. 2d 59, 60 (Fla. 3d DCA 1994)). Furthermore, "when [an] insurer admits that there is a covered loss, any dispute on the amount of loss suffered is appropriate for appraisal." *Id*. at 1297 (quoting *Cincinnati Ins. Co. v. Cannon Ranch Partners, Inc.*, 162 So. 3d 140, 143 (Fla. 2d DCA 2014)). "Thus, where, as here, 'coverage [is] admitted and the only remaining dispute is the amount

of the loss . . . appraisal is appropriate.'" *Id*. (quoting *Gonzalez v. Am. Sec. Ins. Co.*, 2015 WL 12852303, *3-4 (M.D. Fla. Nov. 10, 2015)). Indeed, given the "overwhelming preference in Florida for the resolution of conflicts through any extra-judicial means ... for which the parties have themselves contracted," resort to the appraisal process is strongly preferred. *Id*. at 1296 (quoting *State Farm Fire & Cas. Co. v. Middleton*, 648 So. 2d 1200, 1201-02 (Fla. 3d DCA 1995)).

With both the text of the appraisal provision and these standards favoring its enforcement firmly in mind, the Court addresses Empire's continued attempt to avoid the appraisal process set forth in its policy. Empire argues that Breakwater has waived its right to appraisal by bringing this suit; that short of entering a judgment or injunction, the Court is powerless to refer a fact question—such as the amount of loss—to a private dispute-resolution process set forth in an agreement between the parties; and, that no reference to an appraisal should be made because—based on its belief that no repairs have been completed—this entire controversy is premature. Empire further argues that if the loss question is referred to an appraisal panel, then the panel should be ordered to provide a "line item" award, and the parties should still be able to proceed with discovery in this matter (Doc. 26).

A. **Waiver**

Without citation to any authority, Empire argues that Breakwater waived its right to appraisal by including a jury demand in its complaint and by only suing

Empire under a breach-of-contract theory. But "the policy does not say that filing a complaint cuts off appraisal rights, and the Court has consistently allowed insured parties to seek appraisal after demanding a jury trial." *Waterford Condo. Ass'n of Collier Cty., Inc.*, 2019 WL 3852731, at *3 (citing *Coral Reef Metro, LLC v. Scottsdale Ins. Co.*, No. 2:18-cv-460-FtM-38CM, 2019 WL 721286, *2 (M.D. Fla. Jan. 30, 2019), *report and recommendation adopted*, 2019 WL 700114 (M.D. Fla. Feb. 20, 2019)). In fact, in another breach-of-contract case against Empire for policy benefits related to Hurricane Irma, *Empire* moved for and obtained an appraisal notwithstanding its demand for a jury and the complete absence of any mention of the appraisal provision in its pleading. *See SFR Servs., LLC v. Empire Indem. Ins. Co.*, No. 2:19-cv-369-FtM-99NPM, 2019 WL 5103332 (M.D. Fla. Sept. 5, 2019).

"[T]he question of waiver of appraisal is not solely about the length of time the case is pending or the number of filings the appraisal-seeking party made. Instead, the primary focus is whether the [movant] acted inconsistently with their appraisal rights." *Fla. Ins. Guar. Ass'n v. Branco*, 148 So. 3d 488, 493 (Fla. 5th DCA 2014). When the parties entered their insurance contract, they agreed that either side would have the unilateral right to refer any amount-of-loss dispute for private resolution by an appraisal panel. Breakwater timely invoked the appraisal provision and never did anything inconsistent with this right. There was no waiver.

### B. Referring the amount-of-loss question to an appraisal panel

Empire argues that a reference to appraisal is a substantive remedy that Courts are powerless to utilize short of entering an injunction or judgment. But not only is this inconsistent with Empire having obtained an order referring the amount-of-loss question to an appraisal panel without requesting or obtaining any injunctive relief or judgment in its favor in *SFR Servs., LLC v. Empire Indem. Ins. Co.*, M.D. Fla. Case No. 2:19-cv-369-FtM-99NPM, Empire has advanced this argument before and failed. *See Waterford Condo. Ass'n of Collier Cty., Inc. v. Empire Indem. Ins. Co.*, No. 2:19-CV-81-FTM-38NPM, 2019 WL 3852731, *2 (M.D. Fla. Aug. 16, 2019), *reconsideration denied*, No. 2:19-CV-81-FTM-38NPM, 2019 WL 4861196 (M.D. Fla. Oct. 2, 2019) (citing *CMR Constr. & Roofing, LLC v. Empire Indem. Ins. Co.*, No. 2:18-CV-779-FTM, 2019 WL 2281678, *3 (M.D. Fla. May 29, 2019)). As the Court previously explained: "[T]he difference between summary judgment and appraisal [is]: an 'appraiser determine[s] the amount of loss[,]' while 'the purpose of summary judgment is to dispose of the merits of claims and defenses that are factually unsupported.'" *Id.* (quoting *CMR Constr. & Roofing, LLC*, 2019 WL 2281678, at *3).

While Empire correctly notes that there is no cause of action in Florida law that travels under the name "Petition to Compel Appraisal," this merely underscores the point that referring issues to a private dispute-resolution mechanism is neither a

7

remedy nor a theory of recovery.[2] For instance, courts routinely refer to binding arbitration disputes that fall within the scope of a contractual arbitration provision while the parties continue to litigate matters that fall outside the scope of the provision. *See*, *e.g.*, *Nuvasive, Inc., v. LeDuff*, No. 2:19-cv-698-FtM-38NPM, 2020 WL 8838030, *4 (M.D. Fla. June 30, 2020) (referring to arbitration all but the claims for temporary injunctive relief because they fell outside the scope of the arbitration provision). As Breakwater ably points out here (Doc. 22, pp. 7-11), and as Empire just as ably pointed out in *SFR Servs., LLC v. Empire Indem. Ins. Co.*,[3] Florida's state and federal courts historically and routinely refer amount-of-loss questions to appraisal by interlocutory order and without entering a judgment or injunction; and appellate courts routinely affirm this practice. Moreover, to treat references to private dispute-resolution mechanisms as summary-judgment or injunctive-relief motions would undermine the very reason parties agree to such mechanisms: to reduce or avoid litigation. Neither the parties nor the Court need to be burdened with such an approach here, and Breakwater's motion is procedurally proper.

---

[2] Nor does styling an issue as a count or claim in a pleading somehow convert it into a theory of recovery that may only be disposed of by judgment. For instance, parties sometimes couch requests for punitive damages or for attorney's fees as separate counts in a pleading but labeling something as a stand-alone theory of recovery does not make it so. And courts are not confined to analyzing the issues presented by how they are styled in a pleading. *See* Fed. R. Civ. P. 1, 8(c)(2), 8(d)(1), 8(e).

[3] M.D. Fla. Case No. 2:19-cv-369-FtM-99NPM (Doc. 18, pp. 4-7).

### C. Whether this lawsuit is premature

Empire ignores its own adjudication of Breakwater's claim and the final proof of loss submitted by Breakwater to argue that this lawsuit and the attending motion to compel appraisal are premature. The thrust of the argument is that Breakwater only seeks RCV and not ACV benefits, that RCV benefits are only available to the extent repairs have been completed, and that since no repairs have apparently been completed this entire controversy is premature.[4] But by its own conduct, Empire is estopped from arguing that Breakwater never made a claim for ACV benefits. If that were true, Empire would not have already paid nearly $2 million in ACV benefits to Breakwater.[5]  Furthermore, this argument ignores the May 9, 2019 Sworn Statement in Proof of Loss, in which Breakwater provided an underlying calculation in support of its claim for $23,419,193.02 in ACV benefits. (Doc. 37-1).

While Empire's "prematurity" argument must be rejected because the suggestion that Breakwater has never made a claim for ACV benefits is not true, the Court notes that other notions advanced in Empire's argument must also be rejected. For instance, Empire suggests that an appraisal is never appropriate when RCV

---

[4] RCV benefits are limited to the lesser of the RCV calculation, the policy limits, or the amount of money the insured actually spends to complete the repairs. But ACV equals RCV minus depreciation, so an RCV calculation needs to be made to arrive at ACV.

[5] Insureds are generally entitled to ACV benefits before they repair the property, and to RCV benefits after they repair the property.

9

benefits are neither claimed nor available. But this ignores the fact that ACV equals RCV minus depreciation, and so an RCV calculation must be made to arrive at ACV. Empire also seems to suggest that an appraisal to calculate an RCV award serves little purpose since a judgment for RCV benefits is capped by the amount of money actually spent to complete the repairs. But this ignores the fact that the appraisal panel's RCV award would serve as a cap if the insured ends up spending more (by utilizing more expensive contractors or more expensive materials than the panel found appropriate). And to the extent that Empire suggests than an insured cannot initiate an action to recover both ACV and RCV benefits until it completes the repairs, this must be rejected as well. An ACV award does not hinge on how much is actually spent to complete the repairs, and an array of case-management tools are available to ensure that an RCV judgment is not entered until the repairs are complete.

      **D.**    **The form of the appraisal award**

Without adequately defining the term "line-item," Empire argues that if the amount-of-loss question is referred to an appraisal panel, the Court should require the panel to furnish a line-item appraisal award. (Doc. 26, p. 18). "While a line-item approach may well be of great assistance to the Court and the parties, the issue is not whether the approach is 'preferred,' but whether it can be compelled over the objection of one of the contracting parties." *White Surf Condo. Mgmt. Ass'n, Inc. v.*

*Lexington Ins. Co.*, No. 6:17-CV-1203-ORL-40TBS, 2017 WL 10084143, *1 (M.D. Fla. Aug. 10, 2017). In interpreting an insurance policy, the language of the policy is the most important factor. *Id.* (citing *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (quoting *Taurus Holdings, Inc. v. United States Fid. and Guar. Co.*, 913 So. 2d 528, 537 (Fla. 2005)). And there is no language in the Policy requiring (or defining) a line-item appraisal.

But a lump-sum appraisal award presenting nothing more than a single RCV figure for the entire 28 building condominium complex would not be appropriate either. "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto." Fla. Stat. § 627.419(1). *See also Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000) (reasoning that each clause in an insurance policy must be read in conjunction with the entire policy); *Shaw v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 605 F.3d 1250, (11th Cir. 2010) ("in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect") (quoting *Anderson*, 756 So. 2d at 34). Thus, the appraisal award must be stated in terms that coincide with the contours of the policy. Here, that means

it must present the RCV, ACV, ordinance or law, debris removal, and other benefit figures for each building, and account for the per-building deductibles.

### E. Utilizing the tools of formal discovery

In the title of the motion, Breakwater requests a stay of proceedings. (Doc. 11, p. 1). Beyond that, Breakwater presents no argument in support of a stay. Empire argues discovery should not be stayed while appraisal is proceeding. (Doc. 26, p. 19). Given the complexity of the property at issue, it appears that appropriate use of formal discovery tools may inform and help streamline the appraisal process. And to the extent that the speed with which any repairs are or have been completed may present coverage issues for judicial determination, discovery may inform those determinations as well. Accordingly, and with the expectation that the parties will not duplicate any information-gathering efforts employed to date, the Court will not exercise its discretion to stay all discovery at this time.

Accordingly, it is **ORDERED**:

(1) The Motion to Compel Appraisal and Stay Proceedings (Doc. 22) is **GRANTED in part and DENIED in part**. The amount-of-loss question is referred to the appraisal panel, but this matter is not stayed.

(2) By **April 14, 2021**, the parties will file either a joint notice of agreed umpire or a joint motion for the Court to appoint an umpire. If the parties move the Court to appoint an umpire, the motion will be set for

an in-person hearing during which the parties' respective appraisers will explain their objections to their counterparts' proposed umpires.

(3)  On **July 1, 2021**, and on the first business day of every other month thereafter, the parties will file a status report concerning the appraisal.

(4)  The Motion to Stay Deposition Discovery Pending Ruling on the Motion to Compel Appraisal (Doc. 52) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida on March 31, 2021.

_____
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE